UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

    Plaintiff,

v.

    File No. 1:12-cr-132

    HON. JANET T. NEFF

JOSEPH MARTINEZ,

    Defendant.
_____/

# **O P I N I O N**

Before the Court is a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, filed by Defendant Joseph Martinez (ECF No. 1774). The Government has filed a response to the motion (ECF No. 1817). For the reasons herein, the motion will be denied.

## **I. Background**

In February 2013, the Government charged Defendant and 30 other members of a group called the Holland Latin Kings with conspiring to participate in a criminal enterprise. In July 2013, the Government filed a superseding indictment naming Defendant in the following counts: Count One, participation in a racketeering conspiracy, 18 U.S.C. § 1962(d); Count Four, conspiracy to commit assault with a dangerous weapon in aid of racketeering, 18 U.S.C. § 1959(a)(6); Count Five, conspiracy to use a firearm during and in relation to a crime of violence, 18 U.S.C. §§ 371 and 924(c); Count Seven, attempted murder in aid of racketeering, 19 U.S.C. §§ 1959(a)(5) and (2); Count Fourteen, conspiracy with intent to distribute and to distribute five kilograms or more of cocaine, 18 U.S.C. §§ 846, 841(a), and 841(b)(1)(A)(ii); and Count Fifteen,

conspiracy with intent to distribute and to distribute 100 kilograms or more or marijuana, 18 U.S.C. §§ 846, 841(a), and 841(b)(1)(B)(vii). (Fourth Superseding Indictment, ECF No. 480.)

On October 18, 2013, Defendant signed a plea agreement acknowledging guilt for Counts One and Fifteen of the indictment, in exchange for the dismissal of Counts Four, Five, Seven, and Fourteen. (Plea Agreement, ECF No. 727.) Ten days later, he entered his plea before United States District Judge Robert Holmes Bell.

At his plea hearing, Defendant acknowledged discussing the plea agreement with his attorney and affirmed that no "commitments" or "promises" were made to him other than those contained in the agreement. (Plea Hr'g Tr. 3, ECF No. 805.) He also acknowledged that the maximum sentence for Count One was 20 years in prison and the maximum sentence for Count Fifteen was 40 years in prison, and that the Court was required to consider the sentencing guidelines when sentencing him. (*Id.* at 8-9.) The Court asked Defendant whether anyone "made any promises of leniency or predicted what the sentence might be" if the Court accepted his plea, and he responded, "No, You Honor." (*Id.* at 9.)

In the Final Presentence Investigation Report (PIR) (ECF No. 1017), the probation officer scored Defendant with an adjusted offense level of 38 and a criminal history score of IV, resulting in a guideline sentencing range of 324 to 405 months in prison. The offense level included a three-point reduction for acceptance of responsibility. Defendant's attorney filed objections to the PIR.

Several weeks later, the probation officer filed a supplement to the PIR which recalculated the criminal history score, lowering it to III. The probation officer also recommended that the Court not award the three-level reduction for acceptance of responsibility, and issue a two-level enhancement because Defendant had allegedly obstructed justice by encouraging co-

2

defendants to change their testimony for the benefit of Defendant. (Suppl. to PIR, ECF No. 1159.) With these changes, the range of sentence under the Guidelines was life in prison. The probation officer recommended giving Defendant the maximum penalty available under the applicable statutes.

Judge Bell sentenced Defendant on August 20, 2014. At the sentencing hearing, which was held on June 27 and August 20, Judge Bell rejected the Government's contention that Defendant had obstructed justice. (*See* S. Hr'g Tr., ECF No. 1312.) He also heard testimony regarding Defendant's involvement in a gang-related attack on Devon Ruff, and rejected Defendant's objections regarding his involvement in that attack. In addition, Judge Bell rejected Defendant's objection to an enhancement for possession of a firearm.

Using a total offense level of 38 and a criminal history score of III, the Court determined that Defendant's recommended range of sentence under the Guidelines was 292 to 365 months, subject to the statutory maximum in Count One. (*Id.* at 71.) The Court sentenced Defendant to the statutory maximum of 240 months for Count One, and a concurrent sentence of 240 months for Count Fifteen, which was well below the guidelines range. (*Id.* at 84.)

Defendant appealed his sentence, arguing that it was invalid. Among other things, he contended that he should not have received enhancements to his offense level based on his involvement in the attack on Ruff. On May 12, 2016, the Court of Appeals rejected his arguments and affirmed the Court's judgment. *United States v. Penaloza*, 648 F. App'x 508, 530-33 (6th Cir. 2016).

Defendant now raises the following issue in his motion under § 2255:

I. MR. MARTINEZ'S GUILTY PLEAS WERE LEGALLY INVOLUNTARY, IN VIOLATION OF THE DUE PROCESS CLAUSE, BECAUSE HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE FEDERAL CONSTITUTIONAL RIGHT TO

3

COUNSEL, WHERE TRIAL COUNSEL INFORMED HIM THAT HE WOULD RECEIVE A SENTENCE OF NO MORE THAN 10 YEARS FOR ALL COUNTS, AND MR. MARTINEZ RELIED ON THIS ERRONEOUS AND FALSE ADVICE IN DECIDING TO ENTER INTO THE GUILTY PLEA IN THIS CASE.

(2255 Mot., ECF No. 1774, PageID.22464.)

The Government argues that the motion should be denied because it is meritless. The Court agrees.

## II. Standards

### A. Merits

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A petitioner can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotations omitted)).

4

## B. Hearing

The court must hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). No hearing is required if Defendant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

## III. Analysis

Defendant asserts that he received ineffective assistance of counsel because his attorney told him that he would receive a sentence no higher than 10 years if he pleaded guilty. Defendant supports this assertion with a personal affidavit, an affidavit from his mother, and an affidavit from his sister. According to these affidavits, Defendant's attorney informed each one of them that Defendant would receive a prison sentence of 10 years or less if he pleaded guilty. In other words, Defendant claims that his attorney made promises or representations about his sentence that turned out to be incorrect. Defendant avers that his guilty plea was "based primarily" on his attorney's assurance that his sentence would not be more than 10 years. (Def.'s Aff., ECF No. 1774-2, PageID.22481.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687-92. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

5

The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

Defendant's claim fails because his assertions about what he was told by his attorney are flatly contradicted by the signed plea agreement and by his sworn statements at his plea hearing. Under settled Sixth Circuit authority, a defendant is bound by his statements given under oath at the plea hearing. *See Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("[W]here the court has scrupulously followed the required procedure [under Rule 11 of the Federal Rules of Criminal Procedure], 'the defendant is bound by his statements in response to that court's inquiry.'") (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)).

Furthermore, "even if counsel gives a defendant erroneous information, a defendant is not entitled to relief if the misinformation is 'directly refuted on the record' by the district judge during a plea colloquy." *Cadavid-Yepes v. United States*, 635 F. App'x 291, 299 (6th Cir. 2016) (quoting *United States v. Todaro*, 982 F.2d 1025, 1029 (6th Cir. 1993)).

At his plea hearing, Defendant acknowledged that the charges in Counts One and Fifteen carried maximum penalties of 20 years in prison and 40 years in prison, respectively, and that, in addition to the minimum and maximum sentencing provisions, the Court was required to consider the sentencing guidelines. (Plea Hr'g Tr. 8-9.) The Court expressly asked Defendant if anyone "made any promises of lenience of predicted what the sentence might be if this Count accepts your guilty plea?" and Defendant responded, "No." (*Id.* at 9.)

Similarly, the plea agreement informed Defendant that the racketeering conspiracy charge in Count One carried a maximum penalty of 20 years and the drug conspiracy charge in Count Fifteen carried a maximum penalty of 40 years. (Plea Agreement, ECF No. 727, PageID.4462.) It also informed him that the Court was required to consider the sentencing guidelines before imposing a sentence, and that "the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory minimum and maximum penalties[.]" (*Id.*, PageID.4464.) In other words, even if the Court decided certain factors in Defendant's favor under the Guidelines, the Court was not required to sentence Defendant within the recommended Guideline range.

The plea agreement also emphasized that "no one – not the prosecutor, the defendant's attorney, nor the Court – can make a binding prediction or promise regarding the

sentence the defendant will receive." (*Id.*, PageID.4465.) Immediately above Defendant's signature in the plea agreement, the agreement contained the following affirmation:

> I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. *No promises or inducements have been made to me other than those contained in this agreement.* No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

(*Id.*, PageID.4467 (emphasis added).)

The Court cannot reconcile Defendant's sworn statement to the Court that no one made any promise or prediction to him about the sentence he would receive with his present assertion that his attorney told him he would receive a 10-year sentence. Both his testimony to the Court and the signed plea agreement make clear that he did not receive any such promise or prediction.

Defendant's claim is similar to one raised by the defendant in *Todaro*, who attempted to attack his guilty plea by claiming that his attorney had promised him that he would be sentenced to probation if he pleaded guilty. The Court of Appeals for the Sixth Circuit rejected this claim because the defendant testified at the plea colloquy that no promises had been made to him other than those stated in the plea agreement. *Todaro*, 982 F.2d at 1026. "To allow collateral attacks on guilty pleas to be based upon such claims would make every plea subject to attack and render the oral responses given in court meaningless." *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992). Likewise, to allow Defendant to attack the assistance that he received by counsel on factual grounds that are inconsistent with his sworn statements to the Court would render his statements meaningless.

8

In short, Defendant's claims about counsel's conduct conflict with the clear representations he made when entering his plea, including his sworn statements to the Court. The Court will not lightly disregard those statements. Thus, Defendant cannot demonstrate the factual basis for his ineffective-assistance claim.

Moreover, Defendant cannot demonstrate prejudice because the plea agreement made clear to him what his maximum sentence could be, and that no prediction could be made about his sentence. In addition, the Court informed Defendant about the maximum possible sentences he could receive before Defendant entered his guilty plea. Consequently, Defendant was fully cognizant that he might receive a sentence longer than 10 years when he entered his plea, but he chose to enter the plea anyway. Thus, he cannot demonstrate that he would not have pleaded guilty if not for his attorney's statements. Indeed, Defendant never claims that he would have proceeded to trial if not for his attorney's statements, which is something he must demonstrate to establish prejudice under *Lockhart*. Accordingly, for all the foregoing reasons, Ground One is meritless.

## IV. Conclusion

For the reasons stated, Defendant's claim is meritless. Moreover, an evidentiary hearing is not required because the record of the case conclusively shows that Defendant is not entitled to relief. Accordingly, his motion under § 2255 will be denied.

Under 28 U.S.C. § 2253(c), the Court must determine whether to issue a certificate of appealability. A certificate should issue if the movant has demonstrated "a substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has disapproved of issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to

9

determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Under *Slack*, to warrant a grant of the certificate, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484.

The Court has carefully considered the issues in this matter and finds that reasonable jurists could not find that this Court's denial of Defendant's claim was debatable or wrong. Thus, a certificate of appealability will be denied.

An order will enter consistent with this Opinion.


Dated:   February 6, 2019                             /s/ Janet T. Neff
                                                      Janet T. Neff
                                                      United States District Judge